United States District Court
for the
Southern District of Florida

| Linda Wieters, Plaintiff, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Civil Action No. 16-25284-Civ-Scola |
| | ) | |
| Carnival Corporation, Defendant. | ) | |

**Order Denying the Defendant's Motion for Summary Judgment**

Plaintiff Linda Wieters seeks to recover damages for physical injuries she sustained from a slip-and-fall while a passenger onboard one of Defendant Carnival Corporation's ships. This matter is before the Court on Carnival's motion for summary judgment. (Def.'s Mot., **ECF No. 50**). Wieters has opposed the motion (Pl.'s Resp., ECF No. 62) and Carnival has replied to that opposition (Def.'s Reply, ECF No. 69). For the reasons set forth below, the Court **denies** Carnival's motion.

1. **Background**

Wieters was a passenger aboard Carnival's *Fascination* ship in January 2016. On the *Fascination*, there is large atrium where there is also a central bar. While waiting for a drink order at the Atrium Bar, Wieters fell and broke her tibia. Carnival blames Wieters for the fall; Wieters, in turn, blames Carnival.

Wieters maintains she fell because the floor directly adjacent to the bar, onto which she took a step, was wet and exceedingly slippery. Carnival insists this is not true. It questions whether the floor was even wet and points to surveillance footage that it says shows Wieters falling as a result of her taking a wide, "awkward, lunge-like" step and, presumably, simply losing her balance. Or, says, Carnival, even if the floor *was* wet, Wieters should have noticed the puddle of water and realized the floor was slippery. And, barring that theory, Carnival maintains that Wieters has no evidence showing that Carnival was ever aware of the wet, slippery floor or that it was negligent in maintaining or inspecting the floor.

Conversely, Wieters says the footage actually shows her foot slipping upon her taking a step to her right, onto a tile floor. She maintains that her feet slipped out from under her because: there was water and ice on the floor (Pl.'s Stmt. of Disp. Facts ¶ 26, ECF No. 62, 7); she could not see the water and ice because the floor was dark and shiny, there was poor lighting, and the area was crowded (*id.* at ¶¶ 26–27); and the polished atrium floor is unreasonably

slippery when wet (*id.* at ¶ 32). Weiters also says the puddle was quite large, measuring up to seven feet by seven feet and, based on its size, must have been there for hours, or at least thirty to forty minutes (during the time period that she had been standing next to the bar). (*Id.* at ¶¶ 28, 37.) According to Weiters, no cleaning personnel ever came by the area during the forty minutes or so that she had been standing there prior to her fall. (*Id.* at ¶ 38.)

## 2.   Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

## 3.   Analysis

In its motion for summary judgment, Carnival argues it is not liable for Wieters's injuries because (1) the evidence shows that Wieters's fall was entirely her own fault and that there was no dangerous condition; (2) even if there was

a dangerous condition, it would have been open and obvious; (3) there is no evidence that Carnival had notice of the dangerous condition; and (4) there is no evidence that Carnival negligently maintained or inspected the area. Wieters counters that she did, in fact, present evidence showing that the floor was wet and unreasonably slippery, resulting in her fall; the condition of the floor was not readily apparent; Carnival should have known about the water on the floor; and Carnival was negligent in failing to maintain the floor in a reasonably safe condition. After careful review, the Court finds Wieters has carried her burden of setting forth facts that raise genuine issues for trial with respect to all four issues.

### A. There is a genuine issue of material fact with respect to the cause of Wieters's fall.

Carnival stakes its argument regarding the cause of Wieters's fall on closed-circuit-television footage showing the moments leading up to Wieters's fall. According to Carnival, the footage conclusively shows Wieters "fell as a result of her own actions (or inactions)." (Def.'s Mot. at 8.) Carnival maintains that Wieters's foot slipped out from under her because she inexplicably "took an awkward, lunge-like step to her far right." (*Id.* at 7.) In the same breath, Carnival points to Wieters's drinking at least "three full drinks" that afternoon but doesn't explicitly tie this into her fall.

The Court has reviewed the CCTV footage as well as the other evidence presented and finds genuine issues of material fact regarding the cause of Wieters' fall. As presented by Wieters, directly adjacent to the bar itself, is a dark, highly polished stone or marble floor. (Pl.'s Stmt. ¶¶ 24, 26, 28.) This flooring surrounds the bar. One can see from the CCTV footage that, adjacent to the tiled floor extending away from the bar but within a few feet of it, is carpeting. (*Id.* at ¶ 24.) Wieters testified that, prior to her fall, her "foot never left the carpet" and she "always stayed on the carpet." (*Id.* at 24 (citing Pl.'s Dep. 77:8–10, ECF No. 63-1, 20).) Moreover, the footage itself appears to show that, for much of the time prior to her fall, Wieters indeed had at least one foot, if not both feet, on the carpeted part of the floor. Wieters's contention that her foot slipped on the wet tile floor is not foreclosed by the footage that Carnival relies on. The footage indeed appears to show Wieters's foot slipping on the tile part of the floor after moving it from the carpeted part.

At the same time, Wieters's contention that the floor was wet is supported by her testimony estimating the puddle to be about seven feet by seven feet and her husband's testimony that he had to hang her clothes on the balcony to dry once she returned from the infirmary after her fall. (Pl.'s Stmt. at ¶ 37.) Wieters's husband also testified that, after his wife fell, he saw pieces of melted ice on the floor and on her clothing and that her clothes were damp.

(William Wieters' Dep. 40:24–44:17, ECF No. 63-2, 10–11.) Furthermore, Wieters has presented testimony from an expert that the wet tile floor was unreasonably slippery. (Pl.'s Stmt. at ¶ 32).

This evidence, taken together and viewed in the light most favorable to Wieters, shows there is a genuine issue of material fact with respect to the cause of Wieters's fall. The Court cannot say—without making impermissible credibility findings—whether the slippery floor, Wieters's wide step, Wieters's level of intoxication, some other factor, or a combination thereof, caused her fall. This finding precludes summary judgment based on the cause of Wieters's fall.

### B. There is a genuine issue of material fact with respect to whether the puddle was open and obvious.

Carnival maintains that if there actually was a seven-foot by seven-foot puddle on the floor, it would have been open and obvious. "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Poole v. Carnival Corp.*, No. 14-20237-CIV, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015) (Cooke, J.).

To begin with, Wieters testified that she could not see the water on the floor because of the poor lighting in the area, the shininess of the tile, and the crowds of people obscuring her view. (Pl.'s Stmt. at ¶ 27.) Further, Carnival's insistence that the CCTV footage "clearly shows [Wieters] standing and moving about in the exact same location where she fell for nearly two minutes before fall" (Def.'s Reply, ECF No. 69, 1) is belied by the footage itself. If viewed in the light most favorable to Wieters, it appears her feet stayed mainly within, or at least partially within, the carpeted area before her fall. A reasonable factfinder could further conclude that, because Wieters stayed mostly within the carpeted area, it's possible that she would not have become aware of the large puddle on the tiled part of the floor before her fall.

Additionally, as described above, Wieters has presented expert testimony suggesting that the floor was unreasonably slick. Thus, even if Wieters had seen the water and ice, this does not necessarily mean she should have also appreciated just how slippery it made the floor. *See Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. App'x 949, 953 (11th Cir. 2016) (reversing summary judgment where, although the plaintiff should have recognized that the deck was wet and therefore slippery, the plaintiff would not necessarily have been alerted to the "*extent* of the deck's slipperiness") (emphasis in original). The Court thus finds, based on the record before it, and without the ability to weigh the evidence, that a reasonable factfinder could conclude that the dangerous nature of the floor was not necessarily so open and obvious as to obviate Carnival's duty to adequately maintain a safe environment.

### C. There is a genuine issue of material fact with respect to whether Carnival had notice of the dangerous condition.

Carnival maintains that "there is no evidence that [it] was aware of the alleged seven-foot by seven-foot puddle" that Wieters claims caused her fail. In the Eleventh Circuit, under federal maritime law, there must be a finding of actual or constructive notice of a dangerous condition before a cruise ship can be held liable for negligence. *Pizzino v. NCL (Bahamas) Ltd.,* 709 F. App'x 563, 565 (11th Cir. 2017) (citing y *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) and *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)). Notice cannot be imputed to a cruise-ship operator just because the operator itself created and maintained the defect. *Pizzino*, 709 F. App'x at 565 (again citing both *Everett* and *Keefe*). However, where actual notice is not alleged, constructive notice can be established by showing that "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Keefe*, 867 F.2d at 1322.

In support of its position, Carnival points to the following: Wieters herself didn't notice the puddle until after she fell; even Wieters testified that nobody around the bar noticed the large puddle; and no Carnival personnel actually noticed the puddle. Conversely, Wieters has submitted evidence to the contrary: the puddle was quite large (*e.g.,* Pl's Stmt. at ¶ 28); the puddle of liquid and ice had been there for at least forty minutes (*id.* at ¶ 28); another passenger asked a bartender for a rag to clean up liquid and ice from the floor prior to Wieters's fall (*id.* at ¶ 22); Carnival was aware that its atrium lobbies are areas on its ships where slip-and-falls are most likely (*id.* at ¶ 30); Carnival is aware that the floor around the Atrium Bar can be very slippery when wet (*id.* at ¶ 31); Carnival knows that passengers carry drinks away from the Atrium Bar and that the drinks can spill (*id.* at ¶ 34); personnel frequently carry ice to the Atrium Bar through an opening next to where Wieters fell (*id.* at ¶ 35); and at least twelve other passengers have fallen on similar flooring because of liquid or ice (*id.* at ¶ 36). The Court finds Wieters has pointed to facts sufficient to get her past summary judgment with respect to whether or not Carnival had constructive notice of the dangerous condition that Wieters claims caused her fall.

### D. There is a genuine issue of material fact with respect to whether Carnival negligently maintained or inspected the area where Wieters fell.

Carnival's argument with respect to Wieters's claim of negligent maintenance and inspection, in its entirety, is: "[T]here is no evidence that Carnival failed to maintain the subject floors or area of the Atrium Bar; there is

no evidence that they were in disrepair or otherwise out of order." (Def.'s Mot. at 10.) As Wieters testified, however, no cleaning personnel ever came to the area of the bar during the forty minutes prior to her fall. (Pl.'s Stmt. at ¶ 38.) And Carnival acknowledges that it and it alone was responsible for maintaining and cleaning the floor around the Atrium Bar where Wieters fell. (*Id.* at ¶ 29.) From the evidence, a reasonable fact finder, considering the evidence in the light most favorable to Wieters, could conclude that a large puddle of liquid and ice remained on an unreasonably slippery floor for an unreasonable time and that Carnival was negligent in not cleaning up the mess prior to Wieters' fall.

### 4. Conclusion

Accordingly, the Court **denies** Carnival's motion for summary judgment (**ECF No. 50**).

**Done and ordered**, at Miami, Florida, on September 28, 2018.

_____
Robert N. Scola, Jr.
United States District Judge